TRACY L. WILKISON
United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
DENNISE D. WILLETT (Cal. Bar No. 173491)
Assistant United States Attorney
Terrorism and Export Crimes Section
United States Courthouse
411 West Fourth Street, Suite 8000
Santa Ana, California 92701
Telephone: (714) 338-3540
Facsimile: (714) 338-3507
E-mail: dennise.willett@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

AHMED BINYAMIN ALASIRI,
aka Kevin Lamar James,

Defendant.

No. SA CR 20-00118(A)-CJC

GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT AHMED BINYAMIN ALASIRI

Hearing Date: March 28, 2022
Hearing Time: 10:00 a.m.
Location: Courtroom of the Hon. Cormac J. Carney

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Dennise D. Willett, hereby files its sentencing position regarding defendant Ahmed Binyamin Alasiri.

///

///

///

This sentencing position is based upon the attached memorandum of points and authorities, the United States Probation and Pretrial Services Office recommendation letter, the presentence investigation report, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 14, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division

/s/
DENNISE D. WILLETT
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Approximately one year after being released from prison and while serving a term of federal supervised release, Ahmed Binyamin Alasiri ("defendant") sold methamphetamine to an FBI undercover employee ("UCE") on three occasions. The total weight of pure methamphetamine sold was 1,742 grams.

Defendant pleaded guilty pursuant to a plea agreement to distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii).

On February 22, 2022, the United States Probation and Pretrial Services Office ("USPO") issued its Presentence Investigation Report ("PSR") regarding this case. (Dkt. 51.) It determined defendant's total offense level under the United States Sentencing Guidelines ("U.S.S.G.") is 33 and his criminal history category is IV. The USPO also issued a letter in which it recommended the Court impose a low-end sentence of 188 months of imprisonment, followed by a five-year period of supervised release, and a $100 special assessment. (Dkt. 50.)

For the reasons set forth below, the government agrees with the USPO's calculations and joins in their recommendation that the Court impose a sentence of 188 months of imprisonment, followed by a five-year period of supervised release, and a $100 special assessment.

## II. STATEMENT OF FACTS

The United States requests that the Court adopt the USPO's statement of defendant's offense conduct set forth in paragraphs 9

through 26 of the PSR. For ease of reference, the following fact summary appears in defendant's plea agreement:

On June 4, 2020, defendant met a UCE in person and they began sharing living space. On July 11, 2020, the defendant raised the topic of selling drugs to the UCE for the first time. Defendant explained he had family members who were drug traffickers and that he himself sold drugs to customers. Defendant told the UCE he was able to supply the UCE with any drug and provided price quotes. On July 24, 2020, after agreeing to a price, defendant distributed 430 grams of pure methamphetamine to the UCE in exchange for $3700. On August 6, 2020, defendant distributed 435 grams of pure methamphetamine to the UCE in exchange for $3700. On August 20, 2020, defendant distributed 877 grams of pure methamphetamine to the UCE in exchange for $7,400. The total amount of pure methamphetamine defendant distributed was 1,742 grams.

**III. SENTENCING GUIDELINE CALCULATION**

The USPO calculates defendant's total offense level as 33. This offense level resulted from the following calculation: a base offense level of 36 based on the amount of methamphetamine defendant distributed on three occasions pursuant to U.S.S.G. § 2D1.1(c)(2), with a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), (b). (PSR ¶¶ 34, 41-42.) The government concurs with this calculation, which is consistent with the parties' stipulated guidelines calculations. (Plea Agreement, ¶ 13.)

In addition, the USPO determined that defendant has eight criminal history points, resulting in a criminal history category of IV. (PSR ¶ 57.) The government agrees with the USPO's calculation of defendant's criminal history. At a total offense level of 33, in

criminal history category IV, the USPO correctly states defendant's sentencing guideline imprisonment range as 188 to 235 months. The government concurs with the criminal history category and guideline range calculated by the USPO.

## IV. ANALYSIS OF THE 3553(A) FACTORS

### A. The Nature and Circumstances of the Offense

Defendant distributed a total of 1,742 grams of pure methamphetamine in three transactions to an FBI undercover employee. In a recorded conversation, the defendant, not the UCE, first raised the idea of defendant selling drugs. Defendant told the UCE that he sold drugs directly to customers. Defendant also stated that, "I have connections to every single drug you can imagine." (PSR ¶ 12.) Fortunately, because he distributed this quantity and quality of drugs to a government agent, the methamphetamine in the instant offense did not reach actual users. The U.S.S.G. imprisonment range of 188 to 235 months is well-above the statutory mandatory minimum of 120 months, thereby accounting for the seriousness and danger of methamphetamine distribution to society. As such, a low-end sentence of 188 months of imprisonment is sufficient to address this factor.

### B. History and Characteristics of the Defendant

Defendant has a lengthy criminal history that dates back over 30 years. (PSR ¶ 47.) Defendant was incarcerated continuously from 1996 to 2019, because of offenses he committed while in prison that added custodial time to his original sentence. While in custody for robbery, he was convicted of possession of a deadly weapon by a prisoner. (PSR ¶¶ 52-53.) While in state custody for weapons possession, he conspired to levy war against the United States. (PSR ¶ 54.) While in federal custody, his conduct resulted in his

transfer to our Supermax facility in Florence, Colorado. (PSR ¶ 54, p. 17.) Upon release to a halfway house on July 30, 2019, defendant immediately began violating rules, ultimately resulting in court-ordered enhanced supervised release conditions. (Id.) One year later, while on supervised release, he approached the UCE to engage in drug trafficking. (PSR ¶ 12.) Defendant is scheduled for a supervised release hearing to address conditions violations immediately after his sentencing in this case. Defendant's criminal history and his inability to conform his conduct to law while in custody and on supervised release are aggravating factors.

Facts surrounding defendant's childhood provide context for his detailed criminal history. Defendant was raised by a single mother, who managed to provide for his basic needs. (PSR ¶ 70.) He lived on the infamous Hoover Street, the birthplace of the Hoover Street gang, also known as the Hoover Crips. (PSR ¶ 71.) At age 11, defendant joined the gang after a rival gang member attacked him at school, under the assumption he was already a Hoover. (Id.) It appears that gang membership in his neighborhood was essential for survival. Shortly after joining the gang, defendant began getting into trouble with the law and was arrested and detained multiple times as a juvenile. (PSR ¶ 72.) These unfortunately childhood circumstances and influences explain the genesis of defendant's criminal conduct.

In the short period of time defendant was recently out of custody, he was industrious and able to obtain employment. He started in parttime positions and became a security supervisor, working fulltime in the 7 months leading up to his arrest. (PSR ¶¶ 106-108.) Taking into consideration his lack of work experience and his criminal history, defendant's ability to obtain

and maintain employment is noteworthy and surprising compared to similarly situated defendants. Defendant was involved in a committed relationship, where he provided stability to his significant other, who is suffering with mental health and substance abuse issues. (PSR ¶¶ 75-77.)

A review of defendant’s personal history reveals a life lived in the extremes: extreme childhood circumstances, extreme criminal and violative conduct, and extreme efforts to succeed when out of custody. While mitigative factors do not justify a below-guidelines range sentence when balanced against his aggravating criminal history and violative conduct, they do weigh in favor of a sentence of 188 months of imprisonment, the low-end of the guideline range.

**C. Need for Adequate Deterrence and Respect for the Law**

Defendant was industrious and obtained legitimate fulltime employment, yet he did not hesitate to traffic in drugs to earn income. He valued his personal short-term goals over respect for the law, the societal and individual damage caused by narcotics, and the risk of arrest for drug trafficking. To deter defendant from future criminal conduct and promote respect for the law, a below-guidelines sentence is not appropriate. A sentence of 188 months of imprisonment is necessary and sufficient to accomplish these goals.

**D. Need to Protect the Public from Further Crimes and Avoid Sentencing Disparity**

Defendant’s criminal history reflects a troubled individual who committed dangerous crimes. After serving a lengthy custodial sentence designed to protect the public from a violent conspiracy, defendant engaged in the instant offense, demonstrating the continued need to protect the public from the defendant. In terms of

sentencing disparity, while other defendants who commit this type of offense may deserve a below-guidelines sentence because a guideline sentence is greater than necessary, defendant is not similarly situated to those individuals. A sentence of 188 months of imprisonment is necessary to protect the public and avoid sentencing disparity.

**E. Fine and Supervised Release**

The government agrees with the USPO's assessment that a fine should not be imposed, as defendant is financially unable to pay a fine. The government also agrees with both the USPO's recommendation of a term of five years of supervised release and the supervised release conditions outlined in the USPO's recommendation letter. Defendant stipulated to imposition of the special conditions of supervised release as outlined in the written plea agreement. (Plea Agreement, ¶ 2h.)

## V. CONCLUSION

For the foregoing reasons, the government recommends the Court impose a sentence of 188 months of imprisonment, followed by a five-year period of supervised release under the terms and conditions recommended by the USPO, and a $100 special assessment.

# Certificate of Service

I am a citizen of the United States and am employed in the County of Orange, California. I am over 18 years of age, and I am not a party to the above-entitled action. My business address is the United States Attorney's Office, Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Suite 8000, Santa Ana, California 92701.

I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction the service was made. On this date, March 14, 2022, I served a copy of the foregoing document(s), described as follows:

**GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT AHMED BINYAMIN ALASIRI**

in the following manner:

☐ by placing a true copy in a sealed envelope, addressed to the person(s) specified below, and placing it for interoffice delivery within the courthouse to:

☐ by placing the documents in a sealed envelope, bearing the requisite postage thereon, and placing it for mailing via the U.S. Postal Service addressed as follows:

☒ by e-mailing a pdf. version of the document(s) to the e-mail addresses specified as:

Gregory_Vidana@cacp.uscourts.gov (U.S. Probation)

I declare under penalty of perjury that the foregoing is true and correct, executed on March 14, 2022, at Santa Ana, California.

/s/
JEAN KIM