**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

**HONORABLE CORMAC J. CARNEY, U.S. DISTRICT JUDGE**

UNITED STATES OF AMERICA, Plaintiff,

vs.

AHMED BINYAMIN ALASIRI, Defendant.

**CERTIFIED TRANSCRIPT**

**Public Proceedings**

Case No. 8:20-cr-00118-CJC-1

REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS

CHANGE OF PLEA

MONDAY, MARCH 28, 2022

10:04 A.M.

SANTA ANA, CALIFORNIA

**DEBBIE HINO-SPAAN, CSR 7953, CRR**
FEDERAL OFFICIAL COURT REPORTER
411 WEST 4TH STREET, ROOM 1-053
SANTA ANA, CA 92701
dhinospaan@yahoo.com

**APPEARANCES OF COUNSEL:**

**FOR PLAINTIFF:**

E. MARTIN ESTRADA
United States Attorney
BY: DENNISE WILLETT
Assistant United States Attorney
411 West 4th Street
Suite 8000
Santa Ana, California 92701
714-338-3540
dennise.willett@usdoj.gov

**FOR DEFENDANT:**

CUAUHTÉMOC ORTEGA, FEDERAL PUBLIC DEFENDER
BY: KELLEY MUNOZ
Deputy Federal Public Defender
411 West 4th Street
Suite 7110
Santa Ana, California 92701
714-338-4500
Kelley_Munoz@fd.org

**ALSO PRESENT:**

NICK VICENCIA, FBI Special Agent

**SANTA ANA, CALIFORNIA; MONDAY, MARCH 28, 2022**

**10:04 A.M.**

**- - -**

10:04AM THE COURTROOM DEPUTY: Calling Item Number 2, SACR-20-00118, United States of America vs. Ahmed Binyamin Alasiri.

Counsel, please state your appearances.

MS. WILLETT: Good morning, Your Honor. Denise 10:05AM Willett on behalf of the United States. Also present with me is FBI Special Agent Nick Vicencia.

MS. MUNOZ: Kelley Munoz on behalf of Mr. Alasiri, who's present in custody.

THE COURT: Hello, Mr. Alasiri. Before we get too 10:05AM far in the proceeding, I just want to confirm with you that you've had an opportunity to review the Revised Presentence Investigation Report with Ms. Munoz.

THE DEFENDANT: Yes.

THE COURT: Terrific. What I thought I would do is 10:05AM give you what I believe is the Sentencing Guideline range calculation -- I don't think there's a dispute among us on what that is -- and then share with you some of the 3553 analysis that I've done, and then I'd like to hear from everybody. I haven't made up a final decision on what the sentence should 10:05AM be.

Getting to the Sentencing Guideline range, I use the November 1st, 2021, edition of the Sentencing Guidelines, and I calculated the offense level at 33. There was a 36 base offense level pursuant to Section 2D1.1(c)(2). I adopted the facts and analysis of paragraphs 33 and 34 of the Revised Presentence Investigation Report and agree with the parties that 36 is the correct base offense level because Mr. Alasiri distributed 1,742 grams of pure methamphetamine.

Then I decreased that offense base offense level by three levels for Mr. Alasiri's acceptance of responsibility pursuant to Section 3E1.1. I agree with Probation and the parties that Mr. Alasiri is entitled to the full three-level of reduction for acceptance of responsibility because he timely pled guilty to distributing methamphetamine.

I placed Mr. Alasiri, then, in criminal history Category IV. I calculated eight criminal history points. Three points were assessed for a 1998 conviction for possession of a deadly weapon. Mr. Alasiri was serving his 1998 state sentence when he was paroled on January 29, 2006, which is within 15 years of the date of his drug offense in this case, which is August 20th, 2020.

Then I added three more points for a 2009 conviction for conspiracy to levy war, and then he committed this offense while he was on supervised release for that. So two more points are added. So three points plus three points plus two

points are eight points, and that's criminal history Category IV.

With an offense level of 33 and a criminal history category of IV, then the Sentencing Guideline range is 188 to 235 months in prison.

I then directed my attention to the 3553 analysis by going over everything in the Presentence Investigation Report and the parties' position papers. I started off with looking at the nature and circumstances of the offense and Mr. Alasiri's unique history and personal characteristics and tried to identify anything aggravating or mitigating in that regard.

Mr. Alasiri, you may remember from your change of plea, I first have to calculate the guideline range, and then I apply all the factors of 3553. The first factor is the look at the nature and circumstances of the offense, your unique personal history and characteristics, identify anything aggravating or mitigating in that regard, and then I need to make sure that any sentence I ultimately impose in the case will reflect the seriousness of the offense, promote respect for the law, and provide just punishment; that the sentence will deter you and others from engaging in the criminal conduct; that the sentence will protect the public from any further crimes you might commit; that the sentence will provide you with needed educational or vocational training, medical

care, or other correctional treatment; and that the sentence will avoid unwarranted sentencing disparities or differences among people who have been similarly convicted and sentenced for this type of drug offense.

10:09AM So with that, I identified two aggravating facts and circumstances, and then I identified several mitigating facts and circumstances. Let me share with you the aggravating first, and then I'll turn to the mitigating. The aggravating is Mr. Alasiri was involved in distributing large quantities of 10:10AM a very highly addictive and destructive street drug, methamphetamine, and he did this while he was on supervised release.

I'm also saddened and troubled that Mr. Alasiri has really had a continuous life of crime and being in trouble with 10:10AM law enforcement really since the age of 14 years old.

There were several mitigating facts and circumstances, though, that I did identify on the record. First of all, Mr. Alasiri does come, I believe, from a disadvantaged upbringing. There was no paternal guidance in 10:10AM his life, and he grew up in a very tough neighborhood where gang involvement and participation was hard to avoid. And that gang influence, I think, impacted his life, unfortunately, in a negative way.

I saw in the Presentence Investigation Report that 10:11AM Mr. Alasiri does have some physical issues that BOP needs to be

aware of, specifically pain and suffering in his knee and his back. Also mental health issues that BOP makes sure that they try to address and give him the care and treatment that he deserves dealing with depression and anxiety.

10:11AM I was somewhat encouraged when Mr. Alasiri was on supervised release. Besides getting involved in this one, he was engaged in meaningful employment. And I know with his record and with the skills he had, that was not easy. But he was doing various jobs and seemed to be doing well at them.

10:12AM Another issue that came up, at least in my mind, was the guidelines for this type of offense are pretty severe. And I have no conceptual or idealogical problem with those severe punishments when you're talking about the organizer and leader of the drug trafficking organization. But from what I can 10:12AM gather from the factual basis for the plea agreement and then all the information everybody supplied to me, is Mr. Alasiri's role was really almost like a broker, where he was interacting or meeting with someone who wanted to purchase drugs with the actual distributor or supplier of them.

10:13AM I also would note that Mr. Alasiri has used his time wisely in custody. I understand he's completed numerous courses on self-improvement, and I commend him for that and I appreciate that he did that. I believe he also obtained his GED in his prior sentence.

10:13AM So those are the aggravating and mitigating facts

and circumstances. Everyone, I think, now knows the other factors and objectives of sentencing I must consider and apply in this case. And now I'd like to hear from them.

I would like to say at the outset, it is my intent, 10:13AM whatever sentence that I impose in this case and the sentence I impose in the violation of supervised release, I'm going to have run concurrently. It's the exact same conduct and I -- I can't punish Mr. Alasiri for a violation of his supervised release. That's not one of the 3553 factors I can consider, 10:14AM but I do feel that the sentence in this case, whatever I impose, it's going to be a lengthy sentence. It's going to achieve all the objectives that I can consider for that supervised release violation.

Ms. Willett, I'd like to hear from you first, ma'am, 10:14AM and then I'll turn it over to the defense.

MS. WILLETT: Certainly, Your Honor. I think my sentencing position paper, as well as my response to the defense's sentencing position, clearly articulates why it is that 188 months is the appropriate sentence in this case.

10:15AM As you pointed out, there are a number of mitigating factors that apply to the defendant, but they certainly are not sufficient to encourage the Court, in my mind, to sentence him to the 120 months that the defense is requesting. It's very clear that from the moment that he left BOP custody at Supermax 10:15AM and then came to this district, he's been engaged in violation

conduct. And the Court is familiar with that initially from the supervised release violation, a situation -- well, excuse me, the modification for supervised release that was requested by the Probation Department and some of the reasons for that. 10:15AM And, you know, there were a litany of factual circumstances that obviously caused the Court to agree that those modifications to supervised release were appropriate.

And as the Court can see, while he has been out of custody, he has engaged in additional violative conduct on 10:16AM supervised release in addition to this instant offense. So, unfortunately, Mr. Alasiri has a disconnect with the understanding that if he intends to live his life out of custody, it needs to be done in a law-abiding way.

And I'm certain that this Court had hoped that when 10:16AM it imposed the prior sentence for which he's on supervised release currently, that that amount of time would have been sufficient for him to understand that that is what's going to be necessary for him. But, unfortunately, that lesson was not learned. And so as a result of that, it doesn't appear that 10:16AM it's appropriate for him to get a break from the guidelines down to 120 months when he simply has not accepted the reality of his situation while out of custody, which is, he needs to obey the law just as all other citizens are expected to.

And so because of that, I do believe that the 10:17AM defense's request is not appropriate as a sentence, and that

the low end of the guideline range of 188 months is an appropriate sentence in this particular case.

THE COURT: All right.

MS. WILLETT: Thank you.

10:17AM THE COURT: I appreciate your thoughts.

Ms. Munoz, can I hear from you first and then, obviously, anything Mr. Alasiri would like to say.

MS. MUNOZ: Thank you, Your Honor.

First I would like to just inquire or put out there -- I don't know if the Court believes that the -- this portion needs to be under seal because I will be referencing some of the Protective Order discovery as I did in my paper. So my argument will discuss some of those topics.

THE COURT: I don't have a problem keeping this portion of the transcript under seal.

I assume, Ms. Willett, everybody in the audience is associated with the Government's team?

MS. WILLETT: Yes, Your Honor.

THE COURT: Okay.

**(Proceedings are sealed by the Court and omitted from the transcript.)**

THE COURT: I do appreciate hearing from everybody, and I did appreciate Mr. Alasiri's words.

After considering the advisory guideline range and all the 3553 factors that I must consider, I am going to impose

a low-end guideline sentence of 188 months. I do feel that that sentence will achieve all the objectives, most significantly, deterrence of Mr. Alasiri and others, protection of the public and avoiding sentencing disparities.

10:56AM I have the letter from Probation recommending that sentence. I will modify Condition 7 to include the wording that Mr. Alasiri will be eligible to request modification of this condition after 12 months of being on supervised release. I'm going to overrule the objections to Conditions 14 and 15.

10:56AM I do believe those conditions are necessary in light of Mr. Alasiri's terrorism conviction and his drug offense while on supervised release. I believe the conditions are necessary to make sure that he is not engaging in further terrorism, drug trafficking or other illegal activity. And, obviously, the

10:57AM condition is necessary for deterrence, protection of the public, and avoiding sentencing disparities.

Is there any legal reason why I cannot now impose that sentence, Ms. Willett?

MS. WILLETT: No, Your Honor. Thank you.

10:57AM THE COURT: Ms. Munoz?

MS. MUNOZ: No, Your Honor.

THE COURT: It is ordered that the defendant, Ahmed Binyamin Alasiri shall pay to the United States a special assessment of $100, which is due immediately. Any unpaid

10:57AM balance shall be due during the period of imprisonment at the

rate of not less than $25 per quarter and pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program.

Pursuant to Guideline Section 5E1.2(a), all fines are waived as the Court finds that Mr. Alasiri has established that he is unable to pay and is not likely able to become able to pay any fine.

Court recommends that the Bureau of Prisons conduct a mental and physical health evaluation of Mr. Alasiri and provide all necessary treatment.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Ahmed Binyamin Alasiri, is hereby committed on Count Three of the First Superseding Indictment to the custody of Bureau of Prisons for a term of 188 months. Upon release from imprisonment, he shall be placed on supervised release for a term of five years under the following terms and conditions:

1. He shall comply with the rules and regulations of the United States Probation and Pretrial Services Office and Second Amended General Order 20-04.

2. During the period of community supervision, he shall pay the special assessment in accordance with this judgment's orders pertaining to such payment.

3. He shall cooperate in the collection of a DNA sample from his person.

4. He shall refrain from any unlawful use of a

controlled substance. He shall submit to one drug test within 15 days of placement on supervision and at least two periodic drug tests thereafter, not to exceed eight tests per month as directed by the probation officer.

10:59AM 5. He shall participate in mental health treatment which may include evaluation and counseling until discharged from the treatment by the treatment provider with the approval of the probation officer.

6. As directed by the probation officer, 10:59AM Mr. Alasiri shall pay all or part of the costs of the Court-ordered treatment to the aftercare contractors during the period of community supervision. He shall provide payment and proof of payment as directed by the probation officer. If he has no ability to pay, no payment shall be required.

10:59AM 7. Mr. Alasiri shall participate in electronic monitoring, GPS, or automated identification system and shall observe all rules of such program as directed by the probation officer, for the duration of supervised release. Mr. Alasiri will be eligible to request modification of this condition 10:59AM after 12 months of being on supervised release. Mr. Alasiri will not be responsible for the associated cost of the program.

8. Mr. Alasiri shall possess and/or use only those digital devices and Internet accounts that have been disclosed to and approved by the United States Probation and Pretrial 11:00AM Services Office upon commencement of supervision. Any changes

or additions to digital devices or Internet accounts are to be disclosed to and approved by the probation officer prior to the first use of the same. Disclosure shall include both user names and passwords for all digital devices and Internet accounts. Digital devices include but are not limited to personal computers, tablet computers such as iPads, mobile/cellular telephones, personal data assistants, digital storage media, devices or media which provide access to electronic games, devices that could access or can be modified to access the Internet, as well as any of their peripheral equipment. Internet accounts include but are not limited to e-mail accounts, cloud storage services accounts, social media accounts, electronic billboards, or other accounts on the Internet.

9. After the probation officer has given Mr. Alasiri approval to use a particular digital device or Internet account, he shall not notify -- he need not notify the probation officer about the subsequent use of that particular digital device or Internet account. He shall, however, notify his probation officer of any additions to, removals from or other modifications of the hardware or software on any digital device or Internet account that he causes to occur within one week of that additional removal or modification.

10. Mr. Alasiri shall not use any software program or device designed to hide, alter, or delete information

relating to his computer use, Internet activities or the files stored on his assigned computers. This includes the use of encryption, stenography, file erasing, file shredding, secure file deletions, and cache/cookie removal software without prior written approval from the probation officer.

11:02AM

11. Mr. Alasiri shall provide the probation officer with all billing records for any service or goods related to any digital device or Internet account, including those for cellular telephone, cable, Internet and satellite services, as requested by the probation officer, so that the probation officer can verify compliance with these requirements.

11:02AM

12. All cellular/mobile phones, computer, computer-related devices, and peripheral equipment used by Mr. Alasiri shall be subject to search, seizure, and computer monitoring. This shall not apply to items used at the employment site that are maintained and monitored by the employer.

11:02AM

13. Mr. Alasiri shall comply with the rules and regulations of the computer monitoring program and shall not be responsible for the cost of the program.

11:03AM

14. As directed by the probation officer, Mr. Alasiri shall provide to the probation officer a signed release authorizing credit report inquiries, federal and state income tax returns and a signed release authorizing their disclosure and an accurate financial statement with supporting

11:03AM

documentation as to all assets, income expenses, and liabilities.

15. Mr. Alasiri shall submit his person, property, house, residence, vehicle, papers, computers, cell phones, other electronic communications or data storage devices or media, e-mail accounts, social media accounts, cloud storage accounts, or other areas under his control, to a search by any probation officer or law enforcement officer at any time of the day or night with or without a search warrant, warrant of arrest, probable cause, or reasonable suspicion.

16. Mr. Alasiri shall not obtain or possess any driver's license, social security number, birth certificate, passport, or any other forms of identification in any name other than his true legal name, nor shall he use any name other than his true legal name without the prior written approval of the probation officer.

17. Mr. Alasiri may not associate with anyone known to him to be a Hoover Street, formerly Hoover Crips, gang member and others known to him to be participants in the Hoover Street criminal activities with the exception of his family members. He may not wear, display, use or possess any gang insignias, emblems, badges, buttons, caps, hats, jackets, shoes, or any other clothing that he knows evidence affiliation with the Hoover Street gang, and may not display any signs or gestures that he knows evidence affiliation with the

Hoover Street gang.

18. As directed by the probation officer, Mr. Alasiri shall not be present in any area known to him to be a location where members of the Hoover Street gang meet and/or assemble.

19. Mr. Alasiri shall not associate with anyone known to him to be a member of the Jam'iyyat Ul-Islam Is-Saheeh organization and others known to him to be a participant in JIS's criminal activities.

11:05AM The Court authorizes the probation officer to disclose the Presentence Report and any previous mental health evaluation reports to the treatment provider. Treatment provider may provide information excluding the Presentence Report to state or local social service agencies, such as the State of California, Department of Social Services, for the purposes of Mr. Alasiri's rehabilitation.

Probably makes sense if we now turn to the supervised release, and then I'll give the appropriate waiver for sentencing supervised release after that. I don't know how counsel recommends how I should proceed. Again, for all the mitigating facts and circumstances that I articulated on the record, and I heard from Mr. Alasiri and Ms. Munoz, the sentence of 24 months that I intend to do on the supervised release violation will go concurrently with the sentence in the underlying case.

Would counsel prefer that I take admissions of the alleged violations in the petition? Or how would they like to proceed?

MS. MUNOZ: He is prepared to admit the violations in the petition, Your Honor.

THE COURT: Okay. Mr. Alasiri, do you have a copy of the petition in front of you?

THE DEFENDANT: Yes.

THE COURT: The petition was filed September 25th, 2020, and in that petition they allege violations of your supervised release, actually nine of them. I'm going to ask you about each alleged violation. And if you could let me know whether you admit or deny it, sir.

On page 2, paragraph 1 of the petition, it alleges you were ordered by the Court not to commit another federal, state, or local crime. And on or about July 24, 2020, you distributed methamphetamine, in violation of 21 U.S.C., Section 841(a)(1), (b)(1)(A)(viii).

With respect to the allegations of paragraph 1 of the petition, Mr. Alasiri, do you admit or deny them, sir?

THE DEFENDANT: Admit.

THE COURT: Paragraph 2 alleges you were ordered by the Court not to commit another federal, state, or local crime, and on or about August 6, 2020, you distributed methamphetamine in violation of 21 U.S.C., Section 841(a)(1), (b)(1)(A)(viii).

With respect to the allegations of paragraph 2 of the petition, do you admit or deny?

THE DEFENDANT: Admit.

THE COURT: Turning to paragraph 3, Mr. Alasiri, it alleges you were ordered by the Court not to associate with any person convicted of a felony unless granted permission to do so by the probation officer. And on or before November 11, 2019, you associated with Peter Martinez, a convicted felon, without the permission of the probation officer.

11:08AM With respect to the allegations of paragraph 3 of the petition, do you admit or deny them, sir?

THE DEFENDANT: Admit.

THE COURT: Turning to paragraph 4, it alleges you were ordered by the Court not to associate with any person convicted of a felony unless granted permission to do so by the probation officer. And on or before December 19, 2019, and continuing after such date, you associated with Kingdawud Burgess, a convicted felon, without the permission of the probation officer.

11:09AM With respect to the allegations of paragraph 4 of the petition, do you admit or deny them, sir?

THE DEFENDANT: I admit.

THE COURT: Turning to paragraph 5, it alleges you were ordered by the Court not to associate with any person convicted of a felony unless granted permission to do so by the

probation officer, and on or before January 27, 2020, and continuing after such date, you associated with Jordan Ali, a convicted felon, without the permission of the probation officer.

11:09AM With respect to the allegations of paragraph 5 of the petition, do you admit or deny them, sir?

THE DEFENDANT: Admit.

THE COURT: Turning to paragraph 6, it alleges you were ordered by the Court not to associate with any person 11:09AM convicted of a felony unless granted permission to do so by the probation officer. And on or before January 20, 2020, and continuing after such date, you associated with Sarah Paloyo, a convicted felon, without the permission of the probation officer.

11:10AM With respect to the allegations of paragraph 6 of the petition, do you admit or deny them?

THE DEFENDANT: Admit.

THE COURT: Turning to paragraph 7, it alleges you were ordered by the Court not to associate with any person 11:10AM convicted of a felony unless granted permission to do so by the probation officer. And on or before January 20, 2020, and continuing after such date, you associated with Anzylon Williams, a convicted felon, without the permission of the probation officer.

11:10AM With respect to the allegations of paragraph 7 of

the petition, do you admit or deny them?

THE DEFENDANT: Admit.

THE COURT: Paragraph 8 of the petition, Mr. Alasiri, it alleges you were ordered by the Court to notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer. On July 3rd, 2020, you were questioned by an officer from the Anaheim Police Department and failed to notify the probation officer.

With respect to the allegations of paragraph 8 of the petition, do you admit or deny them?

THE DEFENDANT: Admit.

THE COURT: And then finally, paragraph 9 alleges you were ordered by the Court not to associate with anyone known to you to be a Hoover Street, formerly Hoover Crips, gang member or persons associated with a Hoover Street gang with the exception of your family members. And on July 4, 2020, you associated with Hoover Street gang members without the permission of the probation officer.

With respect to the allegations of paragraph 9 of the petition, do you admit or deny them, sir?

THE DEFENDANT: Admit.

THE COURT: In light of Mr. Alasiri's admissions to the violations of the supervised release, I do find that he has violated the conditions of his supervised release.

So now I have to sentence him for these violations.

Just so the record's clear. The guideline range is 24 to 30 months. The statutory max is 24 months. I am not allowed to take into account punishment, but I can take into account protection of the public, deterring Mr. Alasiri and others from violating their supervised release in this manner, and to avoid sentencing disparities with others who have been sentenced for violating their supervised release.

Considering those factors, considering everything in connection with the sentencing in the underlying case, I believe a concurrent sentence here will achieve all the relevant objectives of 3553 and that concurrent sentence would be for 24 months on this case.

And before I impose that sentence, would the Government like to be heard?

MS. WILLETT: No, Your Honor. We're comfortable with that sentence. And the only thing that we ask is that you terminate supervised release on this particular matter, and that will eliminate some issues related to pending appeal on the supervised release terms.

THE COURT: I agree.

Ms. Munoz, anything you'd like to say?

MS. MUNOZ: Your Honor, we concur with terminating supervised release on the 2005 case number and would just ask that the judgment in each case reflect that these are concurrent sentences with whatever the Court imposes for this

violation.

THE COURT: We'll do that, and certainly the sentence in this case.

Okay. And out of an abundance of caution, Mr. Alasiri, I do want to give you a chance to be heard, if there's anything further you'd like to say before I sentence you on the supervised release hearing, sir.

THE DEFENDANT: Thank you. I think I've covered everything.

THE COURT: Okay. So I will revoke Mr. Alasiri's supervised release and commit him to the custody of Bureau of Prisons for a period of 24 months as to Count One, with no supervision to follow. The 24-month sentence shall run concurrently with the 188-month sentence that I imposed in Case Number 20-118.

Mr. Alasiri, now I have to give you the appropriate advisement on your right to appeal, not only on the supervised release hearing, but on the sentence in the drug case that I did. Let me start with that one first because the advisement is different.

In your plea agreement you agree that you wouldn't challenge the conviction that resulted from your guilty plea. And my understanding and recollection is you wouldn't challenge the sentence as long as the sentence I imposed had no more than 210 months in custody. Well, the sentence that I imposed was

188 months in custody, which is significantly less than the 210 months.

So I believe your appellate waivers in your plea agreement bar you from appealing the sentence I imposed. If you feel differently and you feel that these appellate waiver provisions in your plea agreement are unlawful, you can file a Notice of Appeal with the Court above me called the Ninth Circuit. Any Notice of Appeal that you file with the Ninth Circuit, though, sir, must be filed within 14 days. If you wait longer than 14 days, sir, it will be too late. They will not consider it.

Do you have any questions for me about filing a Notice of Appeal on your drug conviction case?

THE DEFENDANT: No.

THE COURT: All right. Now I want to turn to the sentence that -- concurrent sentence that I imposed on the supervised release case. You have no appellate waiver provision barring you from appealing that concurrent sentence if you want to challenge it.

Again, filing a Notice of Appeal on this is not a difficult process. You just ask the clerk of the court for the form, you sign the form, and all your rights are preserved, but you must do so within 14 days. If you wait longer than 14 days, it's too late, they will not consider any such appeal.

Do you have any questions for me about filing a

Notice of Appeal on your supervised release hearing?

THE DEFENDANT: No.

THE COURT: Mr. Alasiri, I do wish you the best. I sincerely hope that your time in custody will be easier on you than the last one. And I hope you're allowed to participate in programs that can keep you, you know, engaged, not depressed and not anxious. Hopefully Ms. Munoz will give me an update, and that update will be you're doing as well as can be under the circumstances.

11:17AM Is there anything further we need to address?

MS. WILLETT: Yes, Your Honor. The Government moves to dismiss Counts One and Two.

THE COURT: And that motion will be granted.

Ms. Munoz, anything further from the defense?

11:17AM MS. MUNOZ: No, Your Honor. Thank you.

THE COURT: Thank you.

THE COURTROOM DEPUTY: All rise.

**(Proceedings concluded at 11:18 a.m.)**

**--oOo--**

*CERTIFICATE OF OFFICIAL REPORTER*

COUNTY OF LOS ANGELES )
)
STATE OF CALIFORNIA )

I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME COURT REPORTER, in and for the United States District Court for the Central District of California, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

*Date: February 19, 2024*

*/S/ DEBBIE HINO-SPAAN*

*Debbie Hino-Spaan, CSR No. 7953*
*Federal Official Court Reporter*